UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID WORONICK<br>    Plaintiff | ) CIVIL ACTION NO.<br>)<br>) |
| v. | )<br>) |
| MIDDLETOWN NISSAN, LLC<br>    Defendant | )<br>)<br>) MAY 30, 2017 |

## COMPLAINT

### GENERAL ALLEGATIONS

#### I.　　INTRODUCTION

1.　　This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*

#### II.　　PARTIES

2.　　David Woronick ("Plaintiff") is a natural person and consumer who resides in Meriden, Connecticut.

3.　　Middletown Nissan, LLC ("Middletown Nissan") is a Connecticut limited liability company with a business location in Middletown, Connecticut.

#### III.　　JURISDICTION

4.　　This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1640 and Fed. R. Civ. P. 18(a).

1

5. This Court has jurisdiction over Middletown Nissan because it is located in Connecticut and is organized under Connecticut law. Additionally, the subject transaction took place in Connecticut.

6. Venue in this Court is proper because all of the parties are located in this state.

## IV. FACTUAL ALLEGATIONS

7. In late 2016, Plaintiff was interested in purchasing a new vehicle.

8. Plaintiff saw an advertisement by another Nissan dealership in which it offered to provide $3,500 for any trade-in, regardless of condition

9. Plaintiff owned a 2008 Lincoln MKZ with a bad engine, and he believed that this offer would be advantageous.

10. Plaintiff called Middletown Nissan and asked if it would match that offer. The person with whom he spoke responded that it would match that offer.

11. Plaintiff decided to visit Middletown Nissan based upon that promise.

12. Plaintiff met with Mike Aziz ("Aziz"), a Middletown Nissan salesman, and he told Aziz about his prior conversation and Middletown Nissan's agreement to allow him $3,500 for his trade-in, and Aziz confirmed that Middletown Nissan would honor the other dealership's promotional offer and would allow Plaintiff $3,500 for his Lincoln.

13. Aziz of Middletown Nissan would honor the "cash for junkers" program currently being offered by a different Nissan dealership.

14. Plaintiff found a 2016 Nissan Rogue (the "Vehicle") that he was interested in purchasing.

15. The Vehicle had been advertised online by Middletown Nissan for $32,755 on various websites.

16. Despite these various advertised prices, Middletown offered the Vehicle to Plaintiff for a cash sale price to Plaintiff for $34,255, a price that was $1,250 more than the advertised price.

17. Plaintiff agreed to purchase the Vehicle at that price.

18. Middletown Nissan prepared a purchase order and a retail installment contract to sell the Vehicle for a cash price of $34,255.

19. The contract documents included additional items that Plaintiff had not requested and that he did not know had been included in the transaction, including:

    a. A GAP Addendum for $850;

    b. A service contract for $2,500;

    c. A prepaid maintenance and service contract for $1,600; and

    d. A Chase Autocare Environmental Paint & Interior Service Agreement ("Chase Charge") for $1,450.

20. The Chase Charge was included on the purchase order, but was not itemized on the retail installment sales contract but was instead included as part of the cost of the Vehicle.

21. The retail installment sales contract also included the $3,500 allowance for Plaintiff's Lincoln.

22. The finance manager who presented the contract documents to Plaintiff told him that oil changes would be included for free, but he was charged for those oil

changes as part of the prepaid maintenance and service contract. The limited services under this contract were significantly higher than the market rate.

23. Plaintiff was asked to execute the retail installment contract electronically, but he did not notice these additional charges, because the finance manager kept the monitor pointed towards him and Plaintiff could not read it.

24. Plaintiff asked the finance manager what his monthly payment would be, and the finance manager responded that it would be $259.57/month.

25. Plaintiff was not given a copy of the disclosures in the retail installment sales contract in a form that he could keep until after the transaction had been consummated.

26. After signing all of the documents, Plaintiff reviewed them and realized that he had been charged considerable sums for extras that he did not want or need.

27. Plaintiff questioned the finance manager, who advised that the deal had been put together for Plaintiff and that the extras had to be a part of the transaction.

28. The finance manager also informed him that the inclusion of these extras was the only way that the dealer could obtain financing for the Vehicle.

29. Plaintiff was also told by the finance manager that he was not permitted to cancel the extended warranties, even though by their terms he had the option to do so.

30. On information and belief, Middletown Nissan "packed" the contract and charged Plaintiff with more than the advertised price of the Vehicle in order to offset the $3,500 allowance that it had provided for Plaintiff's Lincoln, which a dealership representative later stated had been assessed as having a true value of only $1.

31. Plaintiff was not told the annual percentage rate of the loan until he had signed all of the documents in connection with the sale of the Vehicle.

## V.  CAUSES OF ACTION

### A. Count One – Violation of the Truth in Lending Act

32. Paragraphs 1-32 are incorporated by reference as if more fully set forth herein.

33. Middletown Nissan is a "Creditor" within the meaning of the Truth in Lending Act.

34. Middletown Nissan regularly extends consumer credit in the sale of motor vehicles within the meaning of Regulation Z, 12 C.F.R. § 226.2(a)(17).

35. Middletown Nissan failed to provide Plaintiff with the information required to be disclosed under 15 U.S.C. § 1638 of the Truth in Lending Act prior to the consummation of the transaction in a form that he could keep.

36. Middletown Nissan also violated TILA by failing to disclose the cost of the GAP Addendum, which cost was imposed as a condition of financing and would not have been charged in a cost transaction, as a finance charge.

37. Middletown Nissan also violated TILA by failing to separate the cost of the Chase Charge in the itemization of the amount financed.

38. Middletown Nissan is liable to Plaintiff for statutory damages of double the finance charge, but no less than $200 and no more than $2,000, plus attorney's fees and costs.

### B. Count Two – Violation of the Connecticut Unfair Trade Practices Act

39. Paragraphs 1-38 are incorporated by reference as if more fully set forth herein.

40. Middletown Nissan has violated CUTPA as follows:

a. The violation of TILA as aforedescribed;

b. The sale of the vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price.

c. By agreeing to pay $3,500 as an allowance for Plaintiff's Lincoln and then adding additional costs and increasing the price of the Vehicle as a consequence, a violation of the policy established by Conn. Agency Reg. § 42-110b-28(b)(7)-(9).

41. Plaintiff has suffered ascertainable losses of money or property in that he paid $1,250 more than advertised price of the vehicle, purchased unwanted extras that provide little to no value, and has incurred higher sales tax and finance charges.

42. The defendant is liable to the Plaintiff for his actual damages plus punitive damages and a reasonable attorney's fee and costs.

Wherefore, Plaintiff claims actual damages, statutory damages of double the finance charge, but no less than $200 and no more than $2,000; punitive damage, and attorney's fees and costs.

                PLAINTIFF, DAVID WORONICK

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax (860) 571-7457